# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DEWHITE JOHNSON,<br><br>       Plaintiff,<br>v.<br><br>MATTHEW BURNS, KELSEY GRUEBNAU, BRANDON FISHER, and JOSEPH FALKE,<br><br>       Defendants. | Case No. 22-CV-601-JPS<br><br>**ORDER** |

  Plaintiff Dewhite Johnson, an inmate confined at Waupun Correctional Institution ("WCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. ECF No. 1. On December 22, 2022, the Court screened Plaintiff's complaint and allowed it to proceed on the following two claims: (1) Eighth Amendment violation against Defendants Gruebnau and Fisher for their deliberate indifference to the risk of Plaintiff's self-harm; and (2) First Amendment retaliation against Defendants Burns, Falke, and Fisher. ECF No. 10 at 8.

  On February 3, 2023, Defendants filed a motion for partial summary judgment based on the failure to exhaust administrative remedies and a motion to stay discovery and case deadlines. ECF Nos. 14, 18. Plaintiff responded with his own motions for partial summary judgment, ECF No. 19, which the court liberally construes as a brief in opposition, and a motion to appoint counsel, ECF No. 22. Plaintiff has since filed letters with the Court requesting clarification and a status update. ECF Nos. 24, 26. The motion for partial summary judgment is now fully briefed, and for the reasons discussed below, the Court will grant Defendants' motion for

partial summary judgment. First however, the Court addresses a minor issue to clarify the record going forward.

In reviewing the docket, the Court realizes that it erroneously failed to address Plaintiff's proposed amended complaint it its initial screening order. Plaintiff filed his proposed amended complaint prior to the Court's screening order and prior to Defendants' appearance. *See* ECF Nos. 8, 10. Federal Rule of Civil Procedure Rule 15 requires that the Court freely grant leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2).

Under most circumstances, the Court would have screened the proposed amended complaint as the operative complaint. However, an amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). Plaintiff's document is titled "Supplement And Amended Complaint," ECF No. 8, and, based on the Court's review of the document, appears to be a supplement of the original complaint as opposed to a complete amended complaint. *Compare* ECF No. 1 *with* ECF No. 8. As such, the Court will not allow Plaintiff to proceed on this supplemental complaint and the Court's screening of the original complaint stands. However, to clarify the record going forward, the Court will instruct the Clerk of Court to strike the proposed amended complaint from the docket. The Court acknowledges that the proposed amended complaint attempted to add a new defendant to the case, Defendant Torri Van Buren. *See* ECF No. 8 at 1. To the extent that Plaintiff wishes to amend his complaint going forward and to include claims against this defendant, the Court will allow him the opportunity to do so when it issues a scheduling order in this matter. The Court now turns to the Defendants' motion for partial summary judgment.

1. **STANDARD OF REVIEW**

    1.1 **Summary Judgment**

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

    1.2 **Exhaustion of Prisoner Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). He must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Id.*; *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). A suit must be dismissed if it was filed before exhaustion was complete, even if exhaustion is achieved before judgment is entered. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The exhaustion requirement furthers several purposes, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties

the opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by a defendant. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

### 1.2.1 Inmate Complaint Review System

The Wisconsin Department of Corrections (the "DOC") maintains an inmate complaint review system ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. The ICRS "allow[s] inmates to raise in an orderly fashion issues regarding department policies, rules, living conditions, and employee actions that personally affect the inmate or institution environment, including civil rights claims." *Id.* § DOC 310.01(2)(a). Before commencing a civil action or special proceedings, "inmate[s] shall exhaust all administrative remedies the [DOC] has promulgated by rule." *Id.* § DOC 310.05.

There are two steps an inmate must take to exhaust the available administrative remedies. First, the inmate must file an offender complaint with the Institution Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. *Id.* § DOC 310.07(2). The ICE may reject the complaint or return the complaint to the inmate and allow him or her to correct any issue(s) and re-file within ten days. *See id.* § DOC 310.10(5),(6). If the complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority within ten days. *Id.* § DOC 310.10(10).[1] If the complaint is not rejected, the ICE issues a

---

[1] The ICRS defines a "reviewing authority" as "a person who is authorized to review and decide an inmate complaint." Wis. Admin. Code § DOC 310.03(15).

recommendation of either dismissal or affirmance to the reviewing authority. *Id.* § DOC 310.10(9),(12). The reviewing authority ("RA") will affirm or dismiss the complaint, in whole or in part, or return the complaint to the ICE for further investigation. *Id.* § DOC 310.11(2).

Second, if the ICE recommends, and the RA accepts, dismissal of the complaint, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE") within fourteen days. *Id.* §§ DOC 310.09(1), 310.12. The CCE issues a recommendation to the Secretary of the Department of Corrections, who may accept or reject it. *Id.* §§ DOC 310.12(2), 310.13. The inmate exhausts this administrative process when he or she receives the Secretary's decision. *Id.* § DOC 310.13(2),(3). If the inmate does not receive the Secretary's written decision within ninety days of the date of receipt of the appeal in the CCE's office, the inmate shall consider the administrative remedies to be exhausted. *Id.* § DOC 310.13(4).

## 2. RELEVANT FACTS

Defendants' motion for partial summary judgment addresses the issue only of whether Plaintiff exhausted his administrative remedies as to the retaliation claim. The Court allowed Plaintiff to proceed on a First Amendment retaliation claim against Defendants Burns, Falke, and Fisher for retaliating against him by issuing a conduct report for requesting medical attention/notifying them of his intent to self-harm. ECF No. 10 at 8. Falke allegedly participated in this retaliation by finding him guilty despite no psychological input. *Id.* The Court accordingly finds the following facts relevant to the disposition of the issue at hand.

Plaintiff has failed to respond to Defendants' proposed findings of fact. As such, the Court adopts Defendants' proposed findings of fact as undisputed for the purposes of this motion. *See* Fed. R. Civ. P. 56(e)(2); Civil

Local Rules 7(b) and (d) (warning that "[f]ailure to respond to [a] motion may result in the Court deciding the motion without further input from the parties," and that "[f]ailure to comply with [motion] briefing requirements . . . may result in sanctions up to and including the Court denying or granting the motion."

On January 27, 2020, the ICE's Office received and acknowledged inmate complaint WCI-2020-1633, in which Plaintiff alleged inadequate Psychological Service Unit ("PSU") treatment prior to his January 2, 2020 observation status placement. Defendants' Proposed Findings of Fact ("DPFF") ¶ 3. On January 29, 2020, the ICE Office received inmate complaint WCI- 2020-2139, in which Plaintiff alleged Sergeant Fisher failed to provide adequate treatment in response to Plaintiff's self-harm claims in December of 2019. DPFF ¶ 8.

On January 14, 2020, the ICE Office received inmate complaint WCI-2020-896, in which Plaintiff complained about Conduct Report 67285. DPFF ¶ 14. Plaintiff did not submit any other inmate complaints which alleged that staff had retaliated against him by issuing conduct reports in response to his requests for medical treatment/attention. DPFF ¶ 18.

On December 12, 2019, Plaintiff received Conduct Report #67285, issued by non-Defendant Sergeant Demers. DPFF ¶ 19. A Major Disciplinary Hearing was held on December 23, 2019, for Conduct Report #67285. DPFF ¶ 20. Plaintiff appealed the Major Disciplinary Hearing on December 23, 2019. DPFF ¶ 21. The Conduct Report was appealed based on Plaintiff's claim that the Conduct Report should not have been written in the first place. DPFF ¶ 22. There is no mention of retaliation by Defendants for Plaintiff allegedly requesting medical attention/notifying them of his intent to self-harm. DPFF ¶ 23.

On January 3, 2020, Conduct Report #71999 was written by Defendant Sergeant Fisher. DPFF ¶ 24. A Major Disciplinary Hearing was held on January 23, 2020. DPFF ¶ 25. Plaintiff appealed the Major Disciplinary Hearing on January 30, 2020. DPFF ¶ 26. The Conduct Report was appealed based on Plaintiff's claim that his staff representative was indifferent in the preparation of his hearing, and the hearing officer disregarded the evidence that was presented. Thus, the hearing violated his due process rights. DPFF ¶ 27. There is no mention of retaliation by the Defendants for Plaintiff allegedly requesting medical attention/notifying them of his intent to self-harm. DPFF ¶ 28.

3. **ANALYSIS**

Defendants request partial summary judgment on a single ground: that Plaintiff failed to exhaust his administrative remedies as to the retaliation claim before filing the instant lawsuit. Defendants do not dispute that Plaintiff exhausted his administrative remedies as to the Eighth Amendment claim against Defendants Gruebnau and Fisher, and therefore do not seek summary judgment on this claim. ECF No. 15 at 1. Defendants argue, however, that Plaintiff's inmate complaints failed to raise the issues of retaliation and therefore must be dismissed because it was never raised in an exhausted inmate complaint. *Id.*

One purpose of the exhaustion requirement is to permit prison officials the opportunity to address inmate concerns internally before an inmate initiates litigation. *Woodford v. Ngo,* 548 U.S. 81, 89 (2006); *Schillinger v. Kiley,* 954 F.3d 990, 995 (7th Cir. 2020). Exhaustion "promotes efficiency because a claim can generally be resolved much more quickly in an administrative proceeding than in litigation in federal court." *Schillinger*, 954 F.3d at 995. To provide notice of the conduct complained of, an inmate's

complaint must contain the information required by the prison's administrative rules. *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). Where those rules are silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* at 650; *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). An inmate need not state "facts, articulate legal theories, or demand particular relief," nor must he name each potential defendant, so long as the grievance "object[s] intelligibly to some asserted shortcoming." *Strong,* 297 F.3d at 650; *Riccardo*, 375 F.3d at 524. In this way, the approach to interpreting inmate complaints is akin to the federal notice pleading system. *Dye v. Kingston*, 130 F. App'x 52, 55 (7th Cir. 2005). Wisconsin's administrative rules provide little guidance as to the required contents of an inmate complaint; however, those rules do require that offender complaints "[c]ontain only one issue per complaint, and [] clearly identify the issue." Wis. Admin. Code DOC § 310.09(1)(e).

Courts in this district have provided guidance in addressing retaliation grievances. "If the grievance concerns alleged retaliation, then at a minimum it must identify two things: the protected conduct that provoked the retaliation and the retaliatory act." *Sheahan v. Suliene*, No. 12-cv-433-bbc, at *3–4 (W.D. Wis. May 24, 2013) (citing *Wine v. Pollard*, No. 08-cv-173-bbc, 2008 WL 4379236, at *3 (W.D. Wis. Sept. 23, 2008); *Henderson v. Frank*, No. 06-C-12-C, 2006 WL 850660, at *2 (W.D. Wis. Mar. 21, 2006)).

Here, Plaintiff's argument that a hearing is needed to address the exhaustion issue is unavailing because there are no disputed issues of fact. *See Wagoner v. Lemmon,* 778 F.3d 586, 590 (7th Cir. 2015) *(citing Pavey v. Conley,* 544 F.3d 739 (7th Cir. 2008)). There is no evidence in the record that Plaintiff filed an inmate grievance related to retaliation or brought up retaliation in his disciplinary proceedings. Although Plaintiff has failed to

comply with the procedural requirements of responding to Defendants' proposed findings of fact, the Court has also carefully reviewed all of the parties' submissions and it finds no evidence that Plaintiff exhausted his retaliation claim. Plaintiff points to three inmate complaints to show exhaustion as to the retaliation claim: WCI-2020-2139, WCI-2020-896, and WCI-2020-4269. ECF No. 19 at 7. However, these grievances describe the alleged retaliatory acts (denial of medical care, receiving a conduct report, and not timely releasing him from segregation) but they do not explain the protected conduct that caused the retaliation. Plaintiff's inmate complaints did not give prison officials the opportunity to resolve the issue of retaliation prior to this litigation, and the Court accordingly finds that he did not exhaust his administrative remedies as to this claim.

Because Plaintiff failed to exhaust his First Amendment retaliation claim, the Court will grant Defendants' motion for partial summary judgment and will dismiss the claim without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice).

### 4. MOTION TO APPOINT COUNSEL

Finally, the Court will deny Plaintiff's motion for the appointment of counsel. As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013)

(quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of a plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When a court recruits a lawyer to represent a pro se party, the lawyer takes the case pro bono. Unlike a lawyer appointed to represent a criminal defendant during her prosecution, who is paid by the government for the work, an attorney who takes a prisoner's civil case pro bono has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice in the District. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Although the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful § 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for pro bono appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits

counsel from across the nation to represent pro se plaintiffs on appeal. *See, e.g., James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the pro se appellant); *McCaa*, 893 F.3d at 1029 (same).

Additionally, it must be remembered that, when a court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are a court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, a court asks whether the litigant has made "reasonable" efforts to obtain her own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district court judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g., Kyle v. Feather*, No. 09-cv-90-bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure

that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

Plaintiff has submitted evidence that he contacted attorneys to represent him in the matter. ECF No. 22-1. Plaintiff includes several letters to attorneys seeking legal representation and the responses he received. *Id.* The Court finds that Plaintiff's efforts satisfy the first *Pruitt* prong.

Plaintiff's request must also succeed on the second *Pruitt* question: whether the difficulty of the case exceeds his capacity to coherently present it. This assessment must be made in light of the particular capabilities and circumstances presented by each pro se litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their

degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While a court need not address every concern raised in a motion for appointment of counsel, it must address "those that bear directly" on the individual's capacity to litigate his case. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must be done against the backdrop that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d 647, 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of § 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Several pronouncements from the Court of Appeals appear to be in tension with this principle. First, the Seventh Circuit notes that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation." *James*, 889 F.3d at 327. It deems the "[a]dvanced phases" to include those from discovery onward. *Id.*; *McCaa*, 893 F.3d at 1032. But nearly every prisoner case proceeds to discovery, as the district court applies exceedingly lenient review during initial screening.

Second, the Seventh Circuit instructs that district courts should evaluate a prisoner's competency irrespective of the involvement of a "jailhouse lawyer." *McCaa*, 893 F.3d at 1033; *Walker v. Price*, No. 17-1345,

2018 WL 3967298, at *5 (7th Cir. Aug. 20, 2018). How courts should do this is not clear. A court rarely knows whether a filing was prepared by the plaintiff or someone helping him. And if a court does know that the plaintiff is receiving help, how can it assess his ability to litigate without knowing which portions of the filings are his work, and which come from the jailhouse lawyer? In *Walker*, the court determined that the inmate's work product decreased in quality after his jailhouse lawyer was transferred to another prison. 2018 WL 3967298, at *6. Yet a savvy prisoner, looking to secure counsel for himself, could do this on purpose, crafting his filings to downplay his own litigation capabilities. A court would have no way to assess whether the inmate is sandbagging it.

Finally, the Court of Appeals indicates that claims involving the state of mind of the defendant, such as those involving deliberate indifference, are particularly complex. *James*, 889 F.3d at 327–28; *McCaa*, 893 F.3d at 1032. Yet a government official's culpable mental state is the foundation for most constitutional claims. Indeed, it is often the defining characteristic that sets § 1983 claims apart from their state-law tort analogues. Deliberate indifference is essential to nearly all claims of cruel and unusual punishment, excessive force, mistreatment of medical needs, and First Amendment and due process violations. *See Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) ("*[N]egligently* inflicted harm does not amount to a constitutional violation.") (emphasis in original). Taken together, these claims comprise the vast majority of prisoner litigation in this District. If state-of-mind issues are generally beyond the ability of most pro se litigants to prove, then a

court likely would need to appoint counsel in nearly every prisoner case. This is plainly impossible.

The guiding rule has always been that appointment of counsel is the exception rather than the rule in pro se prisoner litigation. Yet a confluence of all-too-common circumstances—discovery, jailhouse lawyers, and claims concerning state of mind—militate in favor of the appointment of counsel. As the list of reasons to appoint counsel grows, the reasons not to do so shrink. This District's resources have not kept pace.

Against this backdrop, the Court finds that Plaintiff has not presented sufficient evidence and argument showing that he cannot litigate or try this matter competently on his own. In his motion, Plaintiff indicates that he has limited knowledge of the law, that his imprisonment will impede his ability to litigate, and that this case is too complex to proceed without counsel, and that a trial will likely involve conflicting testimony and require counsel. ECF No. 22.

It is true, as Plaintiff intuits, that a lawyer would be helpful in navigating the legal system; trained attorneys are of course better positioned to successfully litigate cases. But Plaintiff's lack of legal training brings him in line with practically every other prisoner or former prisoner litigating in this Court. Further, the Court will assist Plaintiff in this regard (as it does with all prisoner litigants) by providing copies of the most pertinent federal and local procedural rules along with its scheduling order. Thus, ignorance of the law or court procedure is generally not a qualifying reason for appointment of counsel. Plaintiff has not demonstrated that his case is exceptional to require counsel. Additionally, the Court believes Plaintiff has the capacity to conduct discovery, which is the only task currently before him. The Court will therefore deny Plaintiff's motion,

Page 15 of 17
Case 2:22-cv-00601-JPS    Filed 08/18/23    Page 15 of 17    Document 29

without prejudice, and if the case proceeds past summary judgment, the Court will reconsider any renewed motion for counsel at a later time.

5. **CONCLUSION**

For the reasons explained above, the Court will grant Defendants' motion for partial summary judgment, ECF No. 14. Plaintiff failed to properly and timely exhaust his administrative remedies as to the First Amendment retaliation claim. As such, the only remaining claim in this case is Plaintiff's Eighth Amendment claim against Defendants Gruebnau and Fisher. The Court will issue a scheduling order in due course.

Accordingly,

**IT IS ORDERED** that Defendants' motion for partial summary judgment based on exhaustion, ECF No. 14, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's First Amendment retaliation claim against Defendant Burns, Falke, and Fisher be and the same is hereby **DISMISSED without prejudice** for Plaintiff's failure to exhaust his administrative remedies as to this claim;

**IT IS FURTHER ORDERED** that Defendants Burns and Falke be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that Defendants' motion to stay discovery and case deadlines, ECF No. 18, and Plaintiff's motion for partial summary judgment, ECF No. 19, be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 22, be and the same is hereby **DENIED without prejudice**; and

**IT IS FURTHER ORDERED** that the Clerk of Court **STRIKE** Plaintiff's proposed amended complaint, ECF No. 8, on the case docket in order to clarify the record going forward.

Dated at Milwaukee, Wisconsin, this 18th day of August, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge