UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEWHITE D. JOHNSON,

               Plaintiff,

v.

KELSEY GRUEBNAU,

               Defendant.

Case No. 22-CV-601-JPS

**ORDER**

Plaintiff Dewhite D. Johnson ("Plaintiff"), a former inmate, filed a pro se complaint under 42 U.S.C. § 1983 alleging that various defendants violated his constitutional rights. ECF No. 1. On December 22, 2022, the Court screened Plaintiff's complaint and allowed it to proceed on the following two claims: (1) Eighth Amendment violation against Defendants Gruebnau and Fisher for their deliberate indifference to the risk of Plaintiff's self-harm; and (2) First Amendment retaliation against Defendants Burns, Falke, and Fisher. ECF No. 10 at 8. On August 18, 2023, the Court granted Defendants' partial motion for summary judgment based on the failure to exhaust administrative remedies and dismissed the First Amendment claim against Defendants Burns, Falke, and Fisher. ECF No. 29. On April 30, 2024, Defendants filed a stipulation of dismissal of all claims against Defendant Fisher with prejudice. ECF No. 36. As such, the Court will adopt the parties' stipulation and dismiss Defendant Fisher with prejudice and without costs.[1] Given this ruling, the only remaining

---

[1] Defendant Fisher was terminated on May 14, 2024, pursuant to the parties' stipulation. The Court provides this ruling only in an effort to clarify the record for purposes of the judgment.

defendant is Defendant Gruebnau, and the remainder of this Order will therefore refer to her as the only defendant.

Now pending before the Court is Defendant Gruebnau's motion for summary judgment. ECF No. 39. Plaintiff filed two motions for extensions of time to file a motion for summary judgment. ECF Nos. 46, 48. Thereafter, Plaintiff filed a motion for summary judgment, arguing there are disputed issues of fact and which the Court liberally construes as an opposition brief, on August 20, 2024. ECF Nos. 50, 51. The Court will accordingly deny Plaintiff's motions for an extension of time as moot. On September 3, 2024, Defendant Gruebnau filed a reply brief. ECF No. 53. For the reasons described below, the Court will grant Defendant Gruebnau's motion for summary judgment and this case will be dismissed.

1.  **LEGAL STANDARD – SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the

Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

**2.    FACTUAL BACKGROUND**

In compliance with the Court's scheduling order, Defendant Gruebnau submitted a stipulated set of joint facts, ECF No. 41, and a set of disputed facts, ECF No. 42. However, the disputed facts do not follow the Court's summary judgment protocols regarding factual submissions. *See* ECF No. 33 at 4–5 ("Each itemized, disputed fact should be supported by each party's separate pinpoint citation(s) to the record."). Although Defendant Gruebnau cites support for her own positions, there are no citations supporting Plaintiff's assertions. *See* ECF No. 42. The Court understands that Plaintiff may not have provided support in the record for his position; however, if that was the case, it should be clearly indicated in future filings. Nonetheless, the Court has carefully reviewed Plaintiff's submissions to determine whether there is support in the record for his disputes. To the extent that there is no support in the record for a purported dispute, the Court has treated these facts as undisputed for the purposes of summary judgment. *See* Fed. R. Civ. P. 56(e)(2).  As such, the Court takes the following facts from the parties' statement of undisputed facts, except where explicitly noted.

**2.1   The Parties**

Plaintiff was at all times relevant to this case in the custody of the Waupun Correctional Institution ("WCI").[2] Defendant Gruebnau was

---

[2] The undisputed facts provide that Plaintiff was in custody at the time of the filings. ECF No. 41. However, Plaintiff later updated his address to reflect that he is no longer in custody. ECF No. 54.

employed by the Department of Corrections ("DOC") as a Psychological Associate - Doctorate at Waupun from November 2018 through March 2022. As a Psychological Associate at Waupun, Defendant Gruebnau's duties included, but were not limited to, performing mental health screenings, conducting brief individual counseling and mental health monitoring, providing crisis intervention and prevention, individual psychotherapy, and psychological assessments to provide mental health services.

### 2.2 Psychological Services Unit and Requests

The Psychological Services Unit ("PSU") provides treatment, evaluation, and referrals for individuals with mental health and emotional needs. When an inmate has a mental health or emotional concern and would like to speak with a mental health professional at the institution, they can submit a Psychological Services Request ("PSR") with a brief description of the specific reason for their request. Sometimes, inmates will use interview/information request forms instead of PSRs. In these cases, PSU staff processes these forms in the same way they process PSRs. If the inmate is having an emergency situation such as thoughts of suicide or harming themselves, they are encouraged to notify security staff immediately and the first available PSU provider responds to the inmate's needs.

PSU staff, however, cannot provide an immediate response for non-crisis situations. These instances require the inmate to submit a PSR. The requests are then received and triaged by PSU staff and forwarded to the inmate's assigned psychologist for evaluation. If appropriate, the inmate is scheduled for an appointment with their mental health provider. The PSR

is then returned to the inmate with a response from PSU staff, and appointment information when present.

Defendant Gruebnau maintains that a history of suicidal ideation/inclination does not indicate that an individual is at risk of suicide or self-harm at all times, nor that an individual will act on threats of suicide or self-harm. ECF No. 42. While Plaintiff disputes this fact, there is no support in the record to support this assertion other than his own lay opinion. *See id*.[3]

### 2.3 Plaintiff's Psychological Treatment

At all times relevant to this lawsuit, Defendant Gruebnau was Plaintiff's assigned clinician. Defendant Gruebnau reviewed records relevant to Plaintiff's risk of suicide following his assignment to her caseload, as clinically indicated. Plaintiff was released off observation status on December 2, 2019. On December 3, 2019, Plaintiff reported to a PSU staff member that he was irritated and depressed. On December 4, 2019, Plaintiff submitted a PSR. On December 6, 2019, Plaintiff reported to a PSU staff member that he was depressed, had anxiety, and was paranoid. On December 9, 2019, Plaintiff reported to a PSU staff member that he reported self-harm urges on Tuesday or Wednesday the previous week.

On December 18, 2019, Plaintiff reported to Defendant Gruebnau that he had issues with staff and inmates. Defendant Gruebnau told Plaintiff that those were security issues. The parties dispute whether Plaintiff told Defendant Gruebnau that he "had thoughts to end his life by

---

[3] A lay witness may offer testimony that is "rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701.

suicide by cop" that day. ECF No. 42.[4] Defendant Gruebnau disagrees and relies on her medical notes that do not document these thoughts. *Id.* The parties further dispute whether there was hostility between Plaintiff and Defendant Gruebnau during this visit. *Id.* Defendant Gruebnau did not place Plaintiff on observation status on December 18, 2019. Defendant Gruebnau reported that Plaintiff "did not endorse any current suicidal or self-harm ideation, intent or plan." Each situation must be assessed independently, and the decision of whether to place a patient into clinical observation status is made based upon factors presenting in the moment.

Plaintiff did not speak with Defendant Gruebnau between December 19, 2019 and January 3, 2020. Plaintiff submitted a PSR on December 18, 2019, and Dr. Van Buren responded. Plaintiff submitted a PSR on December 25, 2019, and Dr. Van Buren responded. Plaintiff's next visit with Defendant Gruebnau was on January 22, 2020.

Plaintiff attempted "suicide by cop" on January 3, 2020. Plaintiff wrapped a cord around his neck and would not remove it. Plaintiff refused to come to cell front to be restrained. Officers deployed OC spray and a taser on Plaintiff. Plaintiff saw HSU on January 3, 2020.

**3. ANALYSIS**

Defendant Gruebnau brings a motion for summary judgment seeking dismissal of the Eighth Amendment claim for deliberate inference to the serious risk of Plaintiff's self-harm. ECF No. 39. Much of Plaintiff's opposition and declaration focuses on whether Defendant Gruebnau had the authority to move Plaintiff. *See* ECF Nos. 51, 52. The Court does not,

---

[4] The Court notes that there is no factual assertion in the record supporting this quotation. The Court will address this issue in its analysis.

Page 6 of 14

Case 2:22-cv-00601-JPS    Filed 01/27/25    Page 6 of 14    Document 55

however, find that issue to be conclusive; taking the facts in the light most favorable to Plaintiff, the Court will therefore assume that Defendant Gruebnau had such authority. Instead, as discussed below, this case turns on whether the record supports that Defendant Gruebnau was deliberately indifferent to an imminent threat to Plaintiff's safety. Based on the Court's review of the parties' submissions, and for the reasons explained below, the Court will grant Defendant Gruebnau's motion for summary judgment and will dismiss this case.

The Eighth Amendment prohibits "cruel and unusual punishments" and "imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate care." *Phillips v. Diedrick*, No. 18-C-56, 2019 WL 318403, at *2 (E.D. Wis. Jan. 24, 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). While a prison official's deliberate indifference to a prisoner's substantial risk of serious harm violates the Eighth Amendment, not every claim by a prisoner that he did not receive adequate care will succeed. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). To prevail on such a claim, a plaintiff will have to provide evidence showing that "(1) his medical need was objectively serious, and (2) the defendant[] consciously disregarded this need." *Berry v. Lutsey*, 780 F. App'x 365, 368–69 (7th Cir. 2019) (citing *Farmer*, 511 U.S. at 834).

Prison staff have a duty to prevent inmates from causing serious harm to themselves. *Pittman ex rel. Hamilton v. County of Madison*, 746 F.3d 766, 775–76 (7th Cir. 2014). Before an official will be liable for ignoring a risk of self-harm, however, the "risk of future harm must be sure or very likely to give rise to sufficiently imminent dangers." *Davis-Clair v. Turck*, 714 F.

App'x 605, 606 (7th Cir. 2018) (internal quotation marks omitted). The question of when that risk of future harm becomes "sure or very likely to give rise to sufficiently imminent dangers" depends on the circumstances of the case. *See, e.g., Freeman v. Berge*, 441 F.3d 543, 546–47 (7th Cir. 2006) (explaining that "at some point," to ensure a prisoner is not "seriously endangering his health," prison officials would have a duty and right to step in and force a prisoner on a hunger strike to take nourishment); *see also Davis v. Gee*, No. 14-cv-617, 2017 WL 2880869, at *3–4 (W.D. Wis. July 6, 2017) (holding that to show a constitutional injury, the harm must present an objectively, sufficiently serious risk of serious damage to future health; swallowing a handful of Tylenol fails to do that).

In this case, the Court's analysis turns on whether the record supports that Defendant Gruebnau ignored an imminent danger to Plaintiff's safety after their December 18, 2019 interaction. The Seventh Circuit has held that a prisoner's statements that "he was 'hearing voices,' his 'father was taunting [him],' and he 'wanted to commit suicide' " were not sufficient to put prison officials on notice of the prisoner's intent to harm himself. *Johnson v. Garant*, 786 F. App'x 609 (7th Cir. 2019). In *Johnson*, officers recalled the prisoner asking "to see a [Crisis Intervention Team] member because he was feeling suicidal." *Id.* (internal quotation marks omitted). But no officer recalled the plaintiff stating that "he 'intended to immediately harm himself.'" *Id.* When officers ignored the plaintiff's statements, the plaintiff "attempted suicide by burning his arm with a roll of toilet paper that he set on fire." *Id.* The Seventh Circuit affirmed the district court's order granting summary judgment for the defendant– officers. *Id.* at 610. The court concluded that no reasonable jury could "find

that the defendants knew of a substantial risk of suicide based only on [the plaintiff's] statements that he felt suicidal and wanted to speak to a crisis counselor." *Id.* The court reasoned that the plaintiff's statements provided no "indication that he may have 'imminently' sought to have harmed himself." *Id.* (quoting *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006)). The court agreed with the district court that the plaintiff's statements "were insufficient to create a triable issue about whether the officers were subjectively aware of a substantial risk that the plaintiff would imminently attempt suicide." *Id.* at 611.

In its reasoning, the court in *Johnson* distinguished a similar case, finding deliberate indifference where a plaintiff wrote "a last will and testament," the plaintiff previously had attempted suicide and stopped eating, and the incarcerated prisoner's mother had called the prison to warn officials that her son was suicidal. *Id.* at 610 (discussing *Sanville v. McCaughtry*, 266 F.3d 724, 737–38 (7th Cir. 2001)). The court found those additional facts, not present in *Johnson*, put the defendants in *Sanville* "on notice that the plaintiff's statement was not idle." *Id.* at 611.

Similarly, in *Williams v. Stacy*, another court in this district concluded that the prisoner's statement that "he was having suicidal thoughts" was insufficient to put prison officials on notice of a substantial risk of suicide. No. 18-C-1426, 2020 WL 6136148, at *2 (E.D. Wis. Oct. 19, 2020), appeal dismissed *sub nom*. *Williams v. Eckstein*, No. 20-3228, 2021 WL 1978369 (7th Cir. Feb. 2, 2021). The court noted that the presence of a sharpened pen in the prisoner's cell did not alert officials to a risk of harm, and no other evidence suggested that officials should have known the prisoner "had the

means to harm himself or that the risk of future harm was sure or very likely." *Id.* (quoting *Johnson*, 786 F. App'x at 610).

Here, the Court likens this case to the previously mentioned cases where summary judgment was granted based on a finding that no imminent threat existed to a prisoner's safety. The Court begins its discussion by briefly addressing the inadequacy of the record on this issue. As identified above, the parties' factual submission identifies that they dispute what information Plaintiff told Defendant Gruebnau during their visit on December 18, 2019. *See* ECF No. 42 at 1. Plaintiff's version of events, that he told Gruebnau that he had thoughts to end his life by suicide by cop, however, is nowhere in the record as far as the Court can tell. Plaintiff's sworn declaration, ECF No. 52, makes no such factual assertion. Plaintiff's opposition brief cites to ECF No. 28-1 at 29–36 and Exhibit 1008 in support of his assertions. *See* ECF No. 51 at 5. However, these documents do not reference statements Plaintiff made to Defendant Gruebnau on December 18, 2019.

Although Plaintiff's complaint references these factual allegations, the complaint is not sworn and verified, so the Court may not consider it as evidence either. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("[T]here is a distinction between an ordinary complaint that serves as a pleading, and a verified complaint."); *see also Shaul v. Hibbard*, No. 119-CV-3962-JMS-TAB, 2022 WL 1045013, at *1 (S.D. Ind. Apr. 7, 2022) ("The unverified amended complaint is not evidence and thus, statements made in the amended complaint are not considered in resolving the pending motion for summary judgment.") (citing *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020)). In contrast, Plaintiff's medical records from December 18, 2019 indicate that

he "did not endorse any current suicidal or self-harm ideation, intent, or plan." ECF No. 28-1 at 18. As such, based on the lacking factual record, the Court could consider Defendant's fact as undisputed and grant summary judgment on that basis alone.

However, in an effort to liberally construe pro se filings and for a more thorough analysis, the Court will assume *arguendo* that Plaintiff did tell Defendant Gruebnau that he was suicidal by cop during their visit on December 18, 2019. Nonetheless, the Court still finds that the record does not support a finding that Defendant Gruebnau subjectively knew Plaintiff faced an imminent risk to his safety prior to this suicide attempt on January 3, 2020. To begin, none of Plaintiff's statements suggested that he imminently intended to harm himself.[5] Defendant Gruebnau puts forth undisputed evidence that a history of suicidal ideation/inclination does not indicate that an individual is at risk of suicide or self-harm at all times, nor that an individual will act on threats of suicide or self-harm.

More significantly, the length of time and Plaintiff's own statements between Plaintiff's visit with Defendant Gruebnau and his suicide attempt do not support a finding of an imminent threat to his safety. Sixteen days passed between Plaintiff's visit with Defendant Gruebnau and his suicide attempt on January 3, 2020. The undisputed facts show that Plaintiff did not speak with Defendant Gruebnau during this time period. Plaintiff submitted two PSRs during this time period and Dr. Van Buren—a non-defendant—responded. ECF No. 44-1 at 13–14. Plaintiff made no mention

---

[5]The Court notes the difficulty in assessing this factor since it is unclear based on the undeveloped record, specifically, what Plaintiff allegedly said during the December 18, 2019 appointment with Defendant Gruebnau. None of Plaintiff's own statements in his opposition materials, however, suggest imminency.

in either of these PSRs that he was feeling suicidal or needed imminent treatment for his safety. *See id.*

In sum the undisputed facts before the Court do not support a finding that Defendant Gruebnau was subjectively aware that Plaintiff faced an imminent risk of suicide. As such, the Court finds that no reasonable jury could find that Defendant Gruebnau was deliberately indifferent to Plaintiff's serious risk of self-harm. Thus, the Court will accordingly grant Defendant Gruebnau's motion for summary judgment and dismiss the Eighth Amendment claim against her with prejudice.[6]

### 4. CONCLUSION

For the reasons explained above, the Court grants Defendant Gruebnau's motion for summary judgment on the merits; no claims or defendants remain, and the Court will therefore dismiss this action. The Court will accordingly deny Plaintiff's motion for summary judgment as moot. Finally, the Court will deny Plaintiff's second motion for the appointment of counsel, ECF No. 46, as moot. The Court previously provided a full analysis of its decision to deny Plaintiff's first motion to appoint counsel, *see* ECF No. 29, and Plaintiff's second motion did not provide any information to change that prior determination regarding counsel. The Court has carefully reviewed the record and finds that Defendant Gruebnau is entitled to judgment as a matter of law.

---

[6] Defendant Gruebnau also moved for summary judgment based on qualified immunity. ECF No. 40 at 9. Because the Court grants summary judgment on the merits and finds no deliberate indifference based on the undisputed facts, the Court need not reach the question of qualified immunity.

Accordingly,

**IT IS ORDERED** that Plaintiff's motions for an extension of time and motion to appoint counsel, ECF Nos. 46, 48, be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment, liberally construed as opposition to summary judgment, ECF No. 50, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that the parties' stipulation to dismiss Defendant Fisher, ECF No. 36, be and the same is hereby **ADOPTED**; Defendant Fisher be and the same is hereby **DISMISSED with prejudice and without costs**;

**IT IS FURTHER ORDERED** that Defendant Gruebnau's motion for summary judgment, ECF No. 39, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the Eighth Amendment claim against Defendant Gruebnau be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of January 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Page 13 of 14

Case 2:22-cv-00601-JPS   Filed 01/27/25   Page 13 of 14   Document 55

> This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.